```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF ILLINOIS
                        EAST ST. LOUIS DIVISION
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA           :
and STATE OF ILLINOIS,             :
                                   :
        Plaintiffs,              :
                                   :   Civil No. _____
    v.                           :
                                   :
XTRA INTERMODAL, INC. and X-L-CO., INC., :
                                   :
        Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the U.S. Environmental Protection Agency ("EPA"), and the State of Illinois (the "State"), by authority of the Illinois Attorney General, acting at the request and on behalf of the Illinois Department of Natural Resources ("IDNR"), through the undersigned attorneys, file this complaint and allege as follows:

<u>NATURE OF THE ACTION</u>

1. This is a civil action brought by the United States and the State (collectively, the "Plaintiffs") against Defendants XTRA Intermodal, Inc. ("XTRA Intermodal") and X-L-Co., Inc. ("X-L-Co.") pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9606 and 9607. The Plaintiffs seek several forms of relief relating to releases and threatened releases of hazardous substances from facilities at the Old American Zinc Plant Superfund Site in Fairmont City and Washington Park, St. Clair and Madison Counties, Illinois (the "Site"). The United States alleges that the Defendants are liable for injunctive relief and reimbursement of response

costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site pursuant to CERCLA Sections 106 and 107(a)(4)(A), 42 U.S.C. §§ 9606 and 9607(a)(4)(A).  The State alleges that the Defendants are liable for damages for injury to, loss of, or destruction of natural resources resulting from releases of hazardous substances at the Site pursuant to CERCLA Sections 107(a)(4)(C) and 107(f), 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) and (e) of CERCLA, 42 U.S.C. §§ 9613(b) and (e), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c) because the claims arose and the releases of hazardous substances occurred in this district.

## BACKGROUND ON THE SITE AND THE STATUTE

### The Site

4. The Site consists of an approximately 132-acre Facility Area where former zinc smelting operations were conducted, and areas surrounding the Facility Area where elevated concentrations of metals associated with the historic smelter operations were found in various media.  Historic operations at the Site resulted in the release or threat of release of hazardous substances, including lead, cadmium, zinc, arsenic, and manganese, into soils, sediments, and groundwater at the Site.

5. In approximately 1911, Granby Mining & Smelting ("Granby") constructed a smelter in the Facility Area and operated the smelter from approximately 1912 until 1916.

6.      The American Zinc Company of Illinois ("American Zinc") purchased the smelter from Granby in 1916 and operated the smelter until at least the 1950s.  The smelter produced slab zinc, zinc carbonate, cadmium, lead and sulfuric acid.

7.      A by-product of American Zinc's operations was slag or "clinker" that was consolidated by American Zinc in piles in certain portions of the Facility Area.

8.      American Zinc – later known as Azcon Corporation ("Azcon") – retained ownership of the Facility Area at the Site until 1979, when it was purchased by X-L-Co.

9.      X-L-Co. transferred ownership of the Facility Area to XTRA Intermodal in 1995.

10.     XTRA Intermodal continues to own the Facility Area.

Response Activities at the Site

11.     Pursuant to CERCLA, EPA may take "response" actions in response to the release and threatened release of hazardous substances at and from facilities, including contaminated sites.

12.     CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), authorizes the United States and states to recover costs that they incur in response to the release and threatened release of hazardous substances, to the extent such costs are not inconsistent with the National Contingency Plan ("NCP").  The statute imposes liability for such costs on certain classes of potentially responsible parties ("PRPs"), including current owners and operators of a facility from which there has been a release of a hazardous substance and parties that owned or operated a facility at the time of disposal of a hazardous substance.

13.     Under CERCLA Section 106(a), 42 U.S.C. § 9606(a), when EPA determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, EPA may: (i) seek the assistance of the U.S. Department of Justice to secure court-ordered relief

as may be necessary to abate such danger or threat; and (ii) take other actions including issuing such orders as may be necessary to protect public health and welfare and the environment.

14. In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to CERCLA Section 104, 42 U.S.C. § 9604, and will undertake additional response actions in the future. Response actions taken and to be taken at the Site include excavation of contaminated soils inside and outside of the Facility Area, consolidation of excavated soil on the facility property, and capping the consolidated contaminated soil with a 24-inch soil barrier layer and 12-inch vegetation cover system.

15. In accordance with the NCP, a remedial investigation and feasibility study for the Site were performed between 2005 and 2012.

16. EPA selected a final cleanup remedy for the Site in a Record of Decision issued in September 2012.

17. In performing response actions at the Site, EPA has incurred and will continue to incur response costs in connection with response actions at the Site. EPA incurred these costs in a manner not inconsistent with the NCP.

<u>Natural Resource Damage Assessment and Restoration Activities</u>

18. In addition to being liable for payment of response costs and performance of response actions, PRPs at a site are liable for damages for any injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances, including the reasonable costs of assessing such injury, under CERCLA Section 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C). Pursuant to CERCLA § 107(f), 42 U.S.C. § 9607(f), duly-designated federal and state natural resource trustees (and Native American Tribes) are authorized to recover such natural resource damages ("NRD").

19. Under CERCLA, the term "natural resources" includes "land, fish, wildlife, biota, air, water . . . and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States [or] any State or local government," 42 U.S.C. § 9601(16).

20. Natural resources have been injured, and natural resources will continue to be injured, as a result of releases of hazardous substances into the environment at the Site.

21. The Governor of Illinois has designated IDNR to act as the State Trustee for Natural Resources impacted by the release of hazardous substance at or from the Site pursuant to 42 U.S.C. § 9607(f)(2)(A) and 40 C.F.R.§ 300.605.  IDNR acts on behalf of the public for natural resources, including their supporting ecosystems, within the boundary of the State or belonging to, managed by, or appertaining to such State.  40 C.F.R. § 300.605

22. IDNR has been involved in various NRD assessment activities relating to the Site. IDNR has incurred and will continue to incur assessment costs associated with NRD assessment activities relating to the Site.  Federal Trustees for natural resources at and near the Site were advised of IDNR's NRD assessment activities.

23. NRD may include compensation for interim losses to the public attributable to natural resource injuries from the onset of the release through their repair or recovery to an uninjured state, adjusted for any mitigation of those injuries by response actions or early restoration actions, and any increase in injuries that may have occurred as a result of response actions.  NRD also include the costs of actions to restore, replace, or acquire the equivalent of the injured natural resources and the reasonable costs of assessing the injury and the associated damages.

## GENERAL ALLEGATIONS AND ALLEGATIONS RELATING TO THE DEFENDANTS

### General Allegations

24. XTRA Intermodal is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

25. X-L-Co. is a "person," within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

26. The Site is a "facility," within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

27. Lead, cadmium, zinc, arsenic, and manganese are "hazardous substances," within the meaning of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

28. There have been "releases" and "threatened releases" of hazardous substances at the Site, within the meaning of CERCLA Sections 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a).

### The Defendants

29. XTRA Intermodal is a corporation duly formed and existing under the laws of the State of Delaware.

30. X-L-Co. is a corporation duly formed and existing under the laws of the State of Delaware.

31. At times relevant to the matters alleged in this complaint, XTRA Intermodal was a subsidiary of a corporation then known as XTRA, Inc.

32. At times relevant to the matters alleged in this complaint, X-L-Co. was a subsidiary of a corporation then known as XTRA, Inc.

33. In 1976, X-L-Co. executed a lease with Azcon for approximately 20 acres of the Facility Area for use as a truck terminal.

34. After X-L-Co. executed its lease with Azcon, XTRA Intermodal began conducting truck terminal operations on the leased property at the Site.

35. In June 1979, American Zinc and X-L-Co. executed an agreement whereby X-L-Co. purchased the Facility Area and surrounding undeveloped land from Azcon.

36. In June 1979, X-L-Co. also purchased from Azcon "all of the Waelz clinker and other residues, minerals or metals" located at the Facility Area.

37. After the purchase of the Facility Area by X-L-Co., XTRA Intermodal expanded its truck terminal operations at the Site.

38. To level the Facility Area for the trucking operation and create access roads, XTRA Intermodal and X-L-Co. flattened piles of residual slag and clinker at the Site by moving and spreading the material to other portions of the Facility Area and ground up some of the material to reduce the size of the slag pieces.

39. In March 1995, X-L-Co. transferred its ownership of the Facility Area to XTRA Intermodal.

40. XTRA Intermodal continues to own the Facility Area at the Site.

41. In light of the foregoing, X-L-Co. is liable to Plaintiffs as a person that owned or operated portions of the Site property and other facilities at the Site at the time of disposal of hazardous substances at the Site, pursuant to CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

42. In light of the foregoing, XTRA Intermodal is liable to Plaintiffs as a person that: (i) owned or operated portions of the Site property and other facilities at the Site at the time of disposal of hazardous substances at the Site, pursuant to CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2); and (ii) currently owns or operates portions of the Site property and other facilities at the Site, pursuant to CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

### FIRST CLAIM FOR RELIEF
(Cost Recovery by the United States under CERCLA Section 107, 42 U.S.C. § 9607)

43. Paragraphs 1-42 are realleged and incorporated herein by reference.

44. Each of the Defendants is jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States in connection with the Site pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

45. Each of the Defendants also is jointly and severally liable to the United States for any further response costs that the United States incurs in connection with the Site pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

### SECOND CLAIM FOR RELIEF
(Claim by the United States under CERCLA Section 106, 42 U.S.C. § 9606)

46. Paragraphs 1-42 are realleged and incorporated herein by reference.

47. The Environmental Protection Agency has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at and from the Site.

48. Pursuant to CERCLA Section 106(a), 42 U.S.C. § 9606(a), the Defendants are subject to injunctive relief to abate the danger or threat presented by releases or threatened releases of hazardous substances into the environment at and from the Site.

### THIRD CLAIM FOR RELIEF
(NRD Claim by the State under CERCLA Section 107, 42 U.S.C. § 9607)

49. Paragraphs 1-42 are realleged and incorporated herein by reference.

50. Releases of hazardous substances into the environment at the Site have resulted in injury to, destruction of, or loss of natural resources under State trusteeship.

51. The State has incurred reasonable costs of assessing the injury, destruction, or loss of natural resources resulting from releases of hazardous substances to the Site and into the environment at the Site.

52. Each of the Defendants is jointly and severally liable to the State for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such damages and the injury, destruction, or loss resulting from releases of hazardous substances to the Site and into the environment at the Site, pursuant to CERCLA Sections 107(a)(4)(C) and 107(f), 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f).

53. Each of the Defendants also is jointly and severally liable for any further damages that may be assessed for injury to, loss of, or destruction of natural resources damages resulting from such releases of hazardous substances, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and the State of Illinois, respectfully request that this Court:

1. Enter judgment in favor of the United States and against the Defendants, jointly and severally, for all unreimbursed response costs incurred by the United States in connection with the Site;

2. Enter a declaratory judgment in favor of the United States and against the Defendants for any further response costs that the United States may incur in connection with the Site;

3. Order the above-named Defendants to abate the conditions at the Site that may present an imminent and substantial endangerment to the public health or welfare or the environment;

4. Enter a judgment in favor of the State and against the above-named Defendants, jointly and severally, for natural resource damages for the Site, including assessment costs;

5. Enter a declaratory judgment in favor of the State and against the Defendants for any further natural resource damages that may be assessed for the Site;

6. Award the United States and the State their costs of this action; and

7. Grant such other and further relief as the Court deems just and proper.

Signature Page for Complaint in
*United States and the State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.)

**FOR THE UNITED STATES OF AMERICA**:

_____
JEFFREY A. SPECTOR
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611


DANIEL DERTKE
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611


STEVEN D. WEINHOEFT
United States Attorney
Southern District of Illinois

NATHAN D. STUMP
Assistant United States Attorney
Southern District of Illinois
United States Attorneys Office
9 Executive Drive
Fairview Heights, IL 62208

Signature Page for Complaint in
*United States and the State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.)

**FOR THE STATE OF ILLINOIS**:

 /s Andrew B. Armstrong
ANDREW B. ARMSTRONG
Chief, Environmental Bureau
Illinois Attorney General's Office
500 S. Second St.
Springfield, IL  62701