IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA and STATE OF ILLINOIS, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:21-CV-00339-NJR Hon. Nancy J. Rosenstengel |
| v. | ) ) | |
| XTRA INTERMODAL, INC. and X-L-CO., INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**UNOPPOSED MOTION FOR ENTRY
OF CONSENT DECREE**

NOW COMES the United States of America, who states that:

1.        On March 30, 2021, the United States and the State of Illinois filed a complaint

[Doc. 1] in this matter against XTRA Intermodal, Inc. and X-L-Co., Inc. (collectively the

"XTRA Defendants") pursuant to Sections 106 and 107 of the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, 42 U.S.C. §§ 9606

and 9607, seeking several forms of relief relating to releases and threatened releases of

hazardous substances from facilities at the Old American Zinc Plant Superfund Site in Fairmont

City and Washington Park, Illinois (the "OAZ Site" or "Site"). The United States alleged that

XTRA Defendants are liable for injunctive relief and reimbursement of response costs incurred

and to be incurred for response actions taken or to be taken at or in connection with releases and

threatened releases of hazardous substances at the Site. The State alleged that the XTRA

Defendants are liable for damages for injury to, loss of, or destruction of natural resources resulting from releases of hazardous substances at the Site.

2.      The same day, the United States filed a *Notice of Lodging of Consent Decree* [Doc. 2] with this Court and lodged a proposed Consent Decree [Doc. 2-1] -- which has been signed by authorized representatives of the United States, Illinois, and the XTRA Defendants -- pending public notice and comment on the proposed Consent Decree.

3.      In accordance with CERCLA Section 122(d)(2)(B), 42 U.S.C. § 9622(d)(2)(B), and 28 C.F.R. Part 50.7, on April 7, 2021, the United States published a notice in the *Federal Register*, advising the public of the lodging of the proposed Consent Decree and inviting the public to comment on the proposed Consent Decree for a 30-day period commencing with the date of publication of the notice. *See* 86 Fed. Reg. 18072.

4.      The 30-day period for public comment expired on May 7, 2021. The United States did not receive any comments during the public comment period. The United States continues to believe that the proposed Consent Decree is fair, reasonable, protective of human health and the environment, in the public interest, and fully consistent with the purposes of CERCLA.

5.      The United States now requests that the Court approve and enter the Consent Decree.

### Background

6.      The Site consists of an approximately 132-acre "Facility Property" where former zinc smelting operations were conducted, as well as primarily residential areas surrounding the Facility Property where elevated concentrations of metals associated with the historic smelter operations were found in various media. Between 1916 and 1967, American Zinc Company (a

predecessor to Blue Tee Corp.) owned the Facility Property and operated a primary zinc smelter there, producing zinc, cadmium, lead, and sulfuric acid. The smelter's operation produced a slag residue, which American Zinc stored on the property. Beginning in 1976, XTRA leased and then later purchased the Facility Property for use as an interstate intermodal semi-truck storage, maintenance, and staging facility. Plaintiffs alleged that XTRA spread zinc slag from the earlier smelting operations throughout the Facility Property, filling in low and wet areas, and as semi-trucks continuously drove about the property, the crushed slag gravel surface released zinc dust, blowing waste onto adjacent residential areas. XTRA continues to own the Facility Property, but ceased active operations there in 2003.

7.      The General Services Administration (GSA) is the successor to two World War II era government metals processing entities, the Defense Plant Corporation (DPC) and the Metals Reserve Company (MRC). In 1941, DPC, a federally established entity, leased portions of the Facility Property from American Zinc and contracted with American Zinc to have facilities, equipment, and machinery added to the leased area. DPC then leased those facilities to American Zinc to operate. MRC, another federally created entity, also contracted with American Zinc in 1941 to supply and store zinc concentrates on the Facility Property. In 1943, MRC contracted to buy metallic zinc residues from American Zinc. In 1950, DPC's lease ended and American Zinc purchased the operational additions it had previously leased from DPC.

8.      Beginning in 2002, the United States Environmental Protection Agency (U.S. EPA) entered into a series of Administrative Orders on Consent (AOCs) with Blue Tee, the Site's primary Potentially Responsible Party, to perform response work. GSA reimbursed a share of the costs incurred by Blue Tee in performing the removal action work, while XTRA did not participate. In 2016, U.S. EPA took over performance of the cleanup work at the Site following

3

the bankruptcy of Gold Fields Mining, Blue Tee's indemnitor and parent corporation, and a nationwide ability-to-pay environmental settlement with Blue Tee. U.S. EPA collected for the Site approximately $21 million combined from the Gold Fields Mining bankruptcy and Blue Tee settlement.

9.      U.S. EPA estimates total Site costs (past costs incurred and estimated future costs) at $99,624,643. Illinois seeks $1 million in natural resource damages (NRD).

## Proposed Consent Decree

10.     The proposed Consent Decree is consistent with U.S. EPA's CERCLA model consent decrees for ability-to-pay parties and for Remedial Design/Remedial Action. Under the proposed Consent Decree, XTRA confesses to entry of a judgment in favor of the United States in the amount of $5,474,308 for U.S. EPA past response costs and $35,997,724 for U.S. EPA future response costs, and in favor of Illinois in the amount of $528,250 for NRD. Consent Decree ¶ 5. XTRA will attempt to satisfy this judgment through: (i) monetary payments; (ii) sale of the Facility Property; and (iii) recovery of insurance proceeds.

11.     XTRA will pay $2 million ($1.9 million to United States, $100,000 to Illinois) within 30 days after the date of entry of the proposed Consent Decree. Consent Decree ¶¶ 6, 11. The proposed Consent Decree also provides that XTRA will pay to the United States 90% of the net sale proceeds from any eventual sale of the Facility Property. *Id.* at ¶ 10. Prior appraisals conducted in 2014 assessed the potential value of the Facility Property, following remediation, as ranging from $350,000 to $970,000.

12.     The proposed Consent Decree also requires XTRA to use "best efforts" to recover proceeds under its insurance policies. *Id.* at ¶ 12. Appendix C to the proposed Consent Decree lists the potentially applicable insurance policies. The term "best efforts" includes: (i) asserting

and pursuing claims of coverage under the insurance policies; (ii) negotiating and/or litigating to obtain the most favorable resolution of claims under the insurance policies as is reasonable; and (iii) cooperating with and assisting the United States and Illinois in the pursuit of such claims. *Id.* at ¶ 12(a). XTRA will retain 7% of any such proceeds recovered (to cover the cost of coverage pursuit counsel, etc.), with the remainder split between the United States and Illinois on a 9:1 basis until Illinois' $1,000,000 judgment is satisfied. *Id.* at ¶ 12(b).

13.     The proposed Consent Decree also provides that the United States, on behalf of GSA as the Settling Federal Agency, will pay U.S. EPA $37,106,035 for U.S. EPA's past and future response costs and will pay Illinois $471,750 for NRD. *Id.* at ¶ 13. Illinois covenants not to sue GSA and U.S. EPA covenants not to take administrative action against GSA, subject to certain standard reservations such as a failure to meet a requirement of the decree. *Id.* at ¶¶ 23, 24. The XTRA Defendants covenant not to sue GSA for contribution, *id.* ¶ 26, and GSA receives protection from contribution claims for the "matters addressed" in the Consent Decree, which is defined as all response actions taken or to be taken, and response costs incurred or to be incurred, by any person at the Site, as well as NRDs at the Site. *Id.* at ¶ 32.

**No Comments Received During the Public Comment Period**

16.     In its *Notice of Lodging of Consent Decree* [Doc. 2], the United States advised the Court that, in accordance with the procedures set forth in 42 U.S.C. § 9622(d)(2) and 28 C.F.R. § 50.7, the public would be provided an opportunity to comment on the proposed Consent Decree and that after the conclusion of the public comment period, the United States would either notify the Court of its withdrawal of consent to the proposed settlement agreement or move this Court to enter the Decree.

17.     The United States published notice of the proposed Consent Decree in the *Federal Register* on April 7, 2021. 86 Fed. Reg. 18072. No comments were submitted by the public during the 30-day public comment period. The United States continues to believe that the Consent Decree is fair, reasonable, and in the public interest.

## Court Review of Proposed Consent Decree

18.     The legislative history establishes that a court's role in reviewing a settlement under CERCLA is to "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990), quoting H.R. Rep. No. 253, 99th Cong., 1st Sess., Pt. 3, at 19 (1985); *see also United States v. George A. Whiting Paper*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair."). This standard of review is consistent with the standard of review that pertains to consent decrees generally. *See*, *Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable, and adequate"); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985).

19.     In making its determination regarding a proposed settlement, the Court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Securities & Exchange Comm'n v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *see also George A. Whiting Paper*, 644 F.3d at 372. There is a presumption in favor of voluntary settlements. *United States v. AKZO Coatings of America*, 949 F.2d 1409, 1436 (6th Cir. 1991).

20.     The policy encouraging settlements "has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Cannons*, 899 F.2d 79, 84, citing *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987). The underlying purpose of the Court's inquiry is to determine whether the decree adequately protects the public interest. *See United States v. Conservation Chem. Co.*, 628 F. Supp. 391, 400 (W.D. Mo. 1985), citing *United States v. Seymour Recycling Corp.*, 554 F. Supp. 1334, 1337 (S.D. Ind. 1982). It is within the public interest to encourage voluntary cleanups. *See Kelley v. Wagner*, 930 F. Supp. 293, 299 (E.D. Mich. 1996).

## Argument

### The Consent Decree Is Fair, Reasonable, and Consistent With Statutory Goals

### The Consent Decree Is Fair.

21.     In determining whether a proposed settlement is fair, a court need only ascertain whether the terms of the proposed consent decree reflect a reasonable compromise of the litigation. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 747 (9th Cir. 1995). As part of this analysis, courts consider "the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." *United States v. Hooker Chem. & Plastics Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985), *aff'd*, 776 F.2d 410 (2d Cir. 1985). In this case, the settlement embodied in the Consent Decree is the result of good-faith, arms-length bargaining between attorneys for the Plaintiffs and the XTRA Defendants. After a careful analysis of the strengths and risks of litigation, the Parties arrived at a settlement that facilitates XTRA's payment of an appropriate

portion of past and future response costs at the Site and NRD. In exchange, XTRA obtains resolution of the matter and avoids costly litigation of the governments' claims.

22.     The fairness of the proposed Consent Decree is also inherent in the process by which the settlement was reached. The Parties engaged in extensive negotiations over many years, which were carried out in face-to-face meetings as well as conference calls. They exchanged several letters and consent decree drafts. Throughout these negotiations, XTRA was represented by experienced counsel well-versed in environmental law and procedure.

23.     The proposed Consent Decree reflects the Parties' careful and informed assessment of the relative merits of each other's claims and defenses, while taking into consideration the costs and risks associated with litigating what would be a relatively complex case. Avoiding litigation benefits all Parties and spares the resources of the Court. *Cannons*, 899 F.2d at 90 ("all too often, litigation . . . can squander valuable resources"). Not only the Parties, but also the public gains from the "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

24.     The settlement also embodies a measure of compromise on the part of both sides. As with any fair settlement, the Parties benefit from the immediate resolution of the asserted claims and defenses, while foregoing the opportunity to seek unmitigated victory. *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Officers for Justice v. Civil Service Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation").

**The Consent Decree Is Reasonable.**

25.    The "reasonableness" of a Consent Decree may be determined through consideration of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402-03 (D. Col. 1994). When determining whether a settlement is reasonable, "the decree's likely efficaciousness as a vehicle for cleansing the environment is of cardinal importance." *Cannons*, 899 F.2d at 89. The proposed Consent Decree is reasonable in that it contains specific provisions intended to maximize recovery from responsible entities that no longer maintain operational business activities through pursuit of insurance recoveries and eventual sale of the facility property. Likewise, the United States has been assessed an appropriate share of potential contribution to the Site contamination due to its wartime industrial activities. The proposed settlement facilitates payments to U.S. EPA on a timely basis and will likely result in the implementation of response actions in a shorter time than if the Parties had litigated the action.

**The Consent Decree Is Consistent with Relevant Statutory Goals.**

26.    The final consideration for this Court is whether the settlement is consistent with the statute. Naturally, a settlement that is fair and reasonable will generally also satisfy the statutory objectives. *Cannons Eng'g*, 899 F.2d at 90-91. The proposed Consent Decree ensures that cleanup work at the Site will continue, and the Consent Decree satisfies CERCLA's main purposes: making responsible parties pay for site costs and minimizing litigation and transaction costs through settlements. *See United States v. Union Elec. Co.*, 934 F. Supp. 324, 331-32 (E.D. Mo. 1996), *aff'd* 132 F.3d 422 (8th Cir. 1997); *United States v. Bay Area Battery*, 895 F. Supp.

1524, 1535 (N.D. Fla. 1995); *Cannons Eng'g*, 899 F.2d at 90; *United States v. Rohm & Haas*,

721 F. Supp. 666, 696 (D.N.J. 1989).

27.    The settlement set forth in the proposed Consent Decree is consistent with the

criteria set forth above.

28.    The settlement embodied in the Consent Decree constitutes the United States'

best efforts to resolve this case fully and fairly in a manner consistent with the interests of the

public.

29.    The United States believes that the proposed Consent Decree is fair, reasonable,

consistent with the purposes of CERCLA, and in the public interest. Moreover, the Department

of Justice did not receive any comments pertaining to the proposed Consent Decree that

"disclose [any] facts or considerations which indicate that the proposed judgment is

inappropriate, improper, or inadequate" or that the remedy selected by EPA is arbitrary,

capricious or otherwise not in accordance with law.  *See*, 42 U.S.C. § 9622(d)(2)(B).

30.    The State of Illinois does not oppose entry of the proposed Consent Decree.

Pursuant to Paragraph 55 of the Decree, the XTRA Defendants have consented to its entry.

//

//

//

//

//

//

//

THEREFORE, the United States respectfully requests that the Court execute and enter the proposed Consent Decree.

Dated: June 1, 2021

UNITED STATES OF AMERICA

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division

  s/  Jeffrey A. Spector
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
(202) 514-4432
(202) 6l6-6584 (fax)
Jeffrey.Spector@usdoj.gov

STEVEN D. WEINHOEFT
United States Attorney
Southern District of Illinois
NATHAN D. STUMP
Assistant United States Attorney
Southern District of Illinois
United States Attorney's Office
9 Executive Drive
Fairview Heights, IL 62208

OF COUNSEL:

Thomas Turner
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60601

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *United States of America's Unopposed Motion for Entry of Consent Decree* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic-mail. Parties may access this filing through the Court's system.

<table>
<tr><td>06/01/21</td><td>s/ Jeffrey A. Spector</td></tr>
<tr><td>Date</td><td>Jeffrey A. Spector</td></tr>
</table>

12