UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA        :
and STATE OF ILLINOIS,          :
                                :
            Plaintiffs,          :
                                :        Civil No. _____
        v.                      :
                                :
XTRA INTERMODAL, INC. and X-L-CO., INC.,  :
                                :
            Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

TABLE OF CONTENTS

I.      BACKGROUND..........................................................................................................1
II.     JURISDICTION.........................................................................................................2
III.    PARTIES BOUND.....................................................................................................2
IV.     DEFINITIONS............................................................................................................2
V.      STATEMENT OF PURPOSE ...................................................................................5
VI.     CONFESSION OF JUDGMENT BY SETTLING DEFENDANTS................................5
VII.    PAYMENTS ................................................................................................................6
VIII.   TRUSTEE-SPONSORED NATURAL RESOURCE RESTORATION PROJECTS ......10
IX.     FAILURE TO COMPLY WITH CONSENT DECREE .................................................10
X.      COVENANTS BY PLAINTIFFS ...............................................................................12
XI.     RESERVATION OF RIGHTS BY PLAINTIFFS ........................................................13
XII.    COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL
        AGENCY ...................................................................................................................13
XIII.   EFFECT OF SETTLEMENT / CONTRIBUTION.......................................................14
XIV.    PROPERTY REQUIREMENTS..................................................................................16
XV.     ACCESS TO INFORMATION ..................................................................................18
XVI.    RETENTION OF RECORDS.....................................................................................19
XVII.   NOTICES AND SUBMISSIONS ..............................................................................20
XVIII.  RETENTION OF JURISDICTION .............................................................................21
XIX.    INTEGRATION / APPENDICES ...............................................................................21
XX.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT...................................22
XXI.    SIGNATORIES / SERVICE......................................................................................22
XXII.   FINAL JUDGMENT ..................................................................................................22

# I.   BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the U.S. Environmental Protection Agency (EPA), and the State of Illinois (the "State"), on behalf of the Illinois Department of Natural Resources (IDNR) (collectively the "Plaintiffs"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606 and 9607 (CERCLA).

B.      The complaint alleges that defendants XTRA Intermodal, Inc. and X-L-Co., Inc. (collectively, the "Settling Defendants"), are liable to the United States for injunctive relief and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Old American Zinc Plant Superfund Site in Fairmont City and Washington Park, St. Clair and Madison Counties, Illinois (the "Site") and liable to the State for damages for injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances at or from the Site.

C.      The Site consists of an approximately 132-acre Facility Area where former zinc smelting operations were conducted, and areas surrounding the Facility Area where elevated concentrations of metals associated with the historic smelter operations were found in various media. Historic operations at the Site resulted in the release or threat of release of hazardous substances, including lead, cadmium, zinc, arsenic, and manganese, into soils, sediments, and groundwater at the Site.

D.      In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future. Response actions taken and to be taken at the Site include excavation of contaminated soils inside and outside of the Facility Area, consolidation of excavated soil on the facility property, and capping the consolidated contaminated soil with a 24-inch soil barrier layer and 12-inch vegetation cover system.

E.      In performing response action at the Site, EPA has incurred response costs and will incur additional response costs in the future.

F.      The Governor of Illinois has designated IDNR to act as the State Trustee for Natural Resources impacted by the release of hazardous substances at or from the Site. IDNR has been involved in various Natural Resource Damage assessment activities relating to the Site. IDNR has incurred and will continue to incur assessment costs associated with Natural Resource Damage assessment activities relating to the Site. Federal Trustees for Natural Resources were advised of IDNR's assessment activities.

G.      Plaintiffs allege that each Settling Defendant is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Site and Natural Resource Damages. Settling Defendants do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

H.      Settling Defendants allege that the General Services Administration ("Settling Federal Agency") is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is severally liable for response costs incurred and to be incurred at the Site and Natural Resource Damages. Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by (or that may be asserted by) Settling Defendants.

I.      The United States has reviewed the Financial Information and Insurance Policies submitted by Settling Defendants to determine whether Settling Defendants are financially able to pay response costs incurred and to be incurred at the Site and Natural Resource Damages. Based upon this Financial Information and Insurance Information, the United States has determined that Settling Defendants have limited financial ability to pay for response costs incurred and to be incurred at the Site and Natural Resource Damages.

J.      The United States, the State, and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607, and 9613(b) and also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.      PARTIES BOUND

2.      This Consent Decree is binding upon the United States and the State, and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

## IV.      DEFINITIONS

3.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"Affected Property" means all real property at the Site and any other real property, owned or controlled by Settling Defendants, where EPA determines, at any time, that access or land, water, or other resource use restrictions are needed to implement response actions at the Site.

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" means this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" means the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" means the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" means the U.S. Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" means the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Financial Information" means those financial documents identified in Appendix B.

"Future Response Costs" means all costs, including, but not limited to, direct and indirect costs incurred by the United States at or in connection with the Site after September 24, 2019.

"IDNR" means the Illinois Department of Natural Resources and its successor departments, agencies, or instrumentalities of the State of Illinois.

"Insurance Policies" means any liability or indemnity insurance policies issued to or for the benefit of a Settling Defendant, its employees, its officers and directors, or any predecessor or successor in interest, or affiliate to a Settling Defendant, including all policies for which a Settling Defendant is an "insured," "named insured," or "additional insured," and including all policies for primary, excess, pollution legal liability, and environmental impairment liability. This includes, but is not limited to the list of insurance policy numbers included in Appendix C.

"Insurance Proceeds" means all sums recovered from the Insurance Policies for claims associated with the Site, less 7% to be retained by Settling Defendants from any sums recovered by the Settling Defendants.

"Interest" means interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Natural Resource" or "Natural Resources" means land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or the State.

"Natural Resource Damages" or "NRD" means any damages recoverable by the United States or the State on behalf of the public for injury to, destruction of, loss of, loss of use of, or impairment of Natural Resources at the Site as a result of a release of hazardous substances, including, but not limited to: (i) the reasonable costs of assessing such injury, destruction, loss, or impairment arising from or relating to such a release; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources or of acquisition of equivalent resources; (iii) the costs of planning such restoration activities; (iv) compensation for injury, destruction, loss, loss of use, or impairment of natural resources; and (v) each of the categories of recoverable damages described in 43 C.F.R. § 11.15.

"OAZ Site Special Account" means the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Owner Settling Defendant" means XTRA Intermodal, Inc.

"Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" means the United States, the State of Illinois, and the Settling Defendants.

"Past Response Costs" means all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 24, 2019, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Plaintiffs" means the United States and the State.

"Property" means that portion of the Site that is owned by a Settling Defendant as of January 1, 2020. The Property is located at 2575 Kingshighway Blvd., Fairmont City, Illinois.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" means a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" means XTRA Intermodal, Inc. and X-L-Co., Inc.

"Settling Federal Agency" means the General Services Administration and its successor departments, agencies, or instrumentalities.

"Site" or "OAZ Site" means the Old American Zinc Plant Superfund Site, encompassing an approximately 132-acre Facility Area and areas surrounding the Facility Area where elevated concentrations of metals associated with historic smelter operations were found in various media, located in Fairmont City and Washington Park, St. Clair and Madison Counties, Illinois, and generally shown on the map included in Appendix A.

"State" means the State of Illinois.

"Transfer" means to sell, assign, convey, donate, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, donation, or other disposition of any interest by operation of law or otherwise.

"Trustee" means IDNR.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA and Settling Federal Agency.

"XTRA Related Parties" means XTRA Companies, Inc., XTRA Corporation, and XTRA LLC.

## V.      STATEMENT OF PURPOSE

4.      By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendants and Settling Federal Agency to make monetary payments and for the Owner Settling Defendant to implement land use restrictions to resolve their alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, as provided in the Covenants by Plaintiffs in Section X, and subject to the Reservations of Rights by Plaintiffs in Section XI, and as provided in the Covenants by Settling Defendants and Settling Federal Agency in Section XII.

## VI.     CONFESSION OF JUDGMENT BY SETTLING DEFENDANTS

5.      Settling Defendants, jointly and severally, agree and confess to entry of a judgment in favor of the United States in the amount of $5,474,308 for EPA Past Response Costs and $35,997,724 for EPA Future Response Costs and in favor of the State in the amount of $528,250 for Natural Resource Damages. This judgment shall be in effect until Settling Defendants comply with all requirements of this Consent Decree. Such judgment shall be satisfied through (i) monetary payments by Settling Defendants as specified in Paragraphs 6 and 11; (ii) sale of the Property as specified in Paragraph 10; and (iii) recovery of insurance proceeds from any Insurance Policies as specified in Paragraph 12.

## VII.   PAYMENTS

6.      **Payment by Settling Defendants of Response Costs**. Settling Defendants or XTRA Related Parties shall pay to EPA the principal amount of $1,900,000. The payment shall be made within 30 days after the Effective Date and, if timely paid, shall include no Interest.

7.      Settling Defendants or XTRA Related Parties shall make payment by Fedwire Electronic Funds Transfer EFT to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the Southern District of Illinois after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> General Counsel
> XTRA Corporation
> 7911 Forsyth Boulevard, Suite 600
> St. Louis, Missouri 63105
>
> and
>
> Steven J. Poplawski
> BRYAN CAVE LEIGHTON PAISNER LLP
> 211 North Broadway, Suite 3600
> St. Louis, Missouri 63102
> sjpoplawski@bclplaw.com

on behalf of Settling Defendants. Settling Defendants may change the individual to receive payment instructions on their behalf by providing written notice to DOJ and EPA of such change in accordance with Section XVII (Notices and Submissions).

8.      **Deposit of Payment**. The total amount to be paid pursuant to Paragraph 6 (Payment of Response Costs) shall be deposited by EPA in the OAZ Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

9.      **Notice of Payment**. At the time of payment, Settling Defendants shall send notice that payment has been made (a) to EPA in accordance with Section XVII (Notices and Submissions), (b) to DOJ in accordance with Section XVII; and (c) to the EPA Cincinnati Finance Center (CFC) at:

**EPA CFC by email**:      cinwd_acctsreceivable@epa.gov

**EPA CFC by regular mail**:  EPA Cincinnati Finance Center
26 W. Martin Luther King Drive
Cincinnati, Ohio 45268

Such notice shall reference the CDCS Number, Site/Spill ID Number B5A1, and DJ Number 90-11-3-11215.

10.     **Payment of Net Proceeds of Sale of Property / Donation of Property**

a.     **Appraisal of Property**. Prior to any sale of the Property, Owner Settling Defendant shall submit to EPA in writing the names of one or more appraisers. The appraisers identified shall be certified to meet the Uniform Standards of Professional Appraisal Practice by a nationally recognized organization of professional real estate appraisers. EPA may, within 30 days thereafter, disapprove the proposed appraiser(s). If all proposed appraisers are disapproved by EPA, Owner Settling Defendant shall, within 15 days after such disapproval, submit names of additional appraisers, which shall be subject to EPA's review as provided above. Any appraisers not disapproved in writing by EPA within 30 days of submittal shall be deemed to be approved. Owner Settling Defendant shall, within 60 days after the deadline for EPA's disapproval of the proposed appraisers, obtain an appraisal of the Property. The appraisal shall be performed by any appraiser deemed to be approved. Owner Settling Defendant shall be responsible for all appraisal fees. Owner Settling Defendant shall submit a copy of the appraisal to EPA. If the Property is not sold within one year after the date of the appraisal, and if EPA so requests, Owner Settling Defendant shall obtain a new appraisal of the Property, in accordance with this Paragraph. Owner Settling Defendant is under no obligation to obtain an appraisal of the Property except in contemplation of a sale of the Property.

b.     **Donation of the Property.** No appraisal shall be required prior to the donation of the Property to a third party unaffiliated with the Owner Settling Defendant, provided (i) the third party intends to hold or utilize the Property for the benefit of the surrounding community or the greater public interest including, but not limited to, economic development, and (ii) Settling Defendant receives no monetary consideration for donating the Property.

c.     **Maintenance of the Property**. Until the Property is transferred, Owner Settling Defendant shall, at its own expense: (i) maintain and make necessary repairs to the Property; (ii) keep the Property insured against loss from casualty and liability; (iii) timely pay or cause to be paid all real property taxes; and (iv) timely pay all water and sewer bills regarding the Property.

d.     **Marketing of the Property for Sale**. Within 30 days after the date of an appraisal, Owner Settling Defendant shall commence using best efforts to sell the Property. "Best efforts" for purposes of this Paragraph includes: (i) entering into a listing agreement, for the purpose of marketing and selling the property, with a real estate broker, dealer, or agent licensed in the State of Illinois who customarily deals with real property similar to the Property; (ii) advertising the Property for sale in appropriate publications; (iii) listing the Property with appropriate real estate listing services; (iv) maintaining the Property in a condition suitable for showing to prospective buyers; and (v) providing access to the Property, at reasonable times, to real estate brokers, dealers, or agents, and prospective buyers. Owner Settling Defendant shall submit to EPA reports regarding Owner Settling Defendant's efforts to market the Property. The first such report shall be due three months after commencement of efforts to sell the Property, and successive reports shall be due quarterly thereafter.

e.     If a proposed contract for the sale of the Property provides for Owner Settling Defendant to receive all cash, is for at least 90% of the appraised value of the Property,

and provides for the property sale to occur within 60 days after the date of execution of the sales contract, then Owner Settling Defendant may execute the contract without EPA's prior written approval. Otherwise, Owner Settling Defendant shall provide to EPA a copy of the proposed Property sales contract, and must obtain EPA's written approval before executing the contract.

      f.    Owner Settling Defendant shall notify EPA in writing, at least 10 days prior to any Transfer of the Property. If the Property is to be sold, Owner Settling Defendant's notice of Transfer shall include a calculation of the net sales proceeds and all documentation regarding the values used in the calculation, including: (i) copies of all documents to be executed regarding the sale; (ii) documentation of the amounts to be paid to holders of any liens listed as a "permitted encumbrance" in Appendix D; (iii) documentation of the amounts of closing costs to be paid; (iv) documentation of any broker's fees regarding the sale; and (v) documentation of the amounts of state and/or municipal transfer taxes to be paid regarding the sale of the Property. Owner Settling Defendant may request that EPA approve the calculation of net sales proceeds prior to the sale. In that event, EPA's approval shall be binding in any subsequent dispute between the United States and Owner Settling Defendant regarding whether Owner Settling Defendant has complied with Paragraph 10.g. If the Property is to be donated, Owner Settling Defendant's notice of Transfer shall certify its compliance with Paragraph 10.b.

      g.    At the time of any sale of the Property, Owner Settling Defendant shall pay to the United States 90% of the net sales proceeds of the sale of the Property. "Net sales proceeds" shall mean, for purposes of this Paragraph, all consideration received by Owner Settling Defendant from the sale of the Property, not including: (i) any payment in consideration of the release of any lien listed as a "permitted encumbrance" in Appendix D; (ii) any reasonable closing costs paid regarding the sale; (iii) any reasonable broker's fees regarding the sale; and (iv) any state and/or municipal transfer taxes regarding the sale. Owner Settling Defendant shall make payment to EPA by official bank check made payable to EPA Hazardous Substance Superfund.

      h.    Owner Settling Defendant shall not be required to comply with this Paragraph with respect to the Property or a portion of the Property, in the event the Property or such portion thereof is transferred involuntarily by operation of law, including foreclosure or its equivalent of any lien which is listed as a "permitted encumbrance" in Appendix D, or is transferred by deed or other assignment in lieu of foreclosure due to a default on indebtedness secured by the Property or such portion thereof.

      i.    In the event of a sale or other transfer of the Property or any portion thereof, Owner Settling Defendant shall continue to be subject to all terms, conditions and benefits of this Consent Decree, except for Section XIV (Property Requirements), to the extent it requires Owner Settling Defendant to provide access to, or to abide by any land, water, or other resource use restrictions regarding the Property or portion thereof that was sold or transferred. Owner Settling Defendant shall continue to be subject to the requirement to enforce any agreements, pursuant to Section XIV, for the new owner to provide access to the Property or portion thereof that was sold.

    11.    **Payment of Natural Resource Damages**. Within 30 days after the Effective Date, Settling Defendants shall pay to the State $100,000, in the form of an official bank check.

The check shall be made payable to the Illinois Department of Natural Resources and shall reference *United States and Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* Settling Defendants shall send the check to:

> Illinois Department of Natural Resources
> Attn: Deposit in Natural Resources Restoration Trust Fund (831)
> c/o Tom Heavisides
> 1 Natural Resources Way
> Springfield, IL 62702

The sum shall be applied toward natural resource damage assessment costs incurred by IDNR and to pay for Trustee-sponsored natural resource restoration projects in accordance with Section VIII of the Consent Decree.

12.     **Payment of Insurance Proceeds.**

a.      Settling Defendants shall use "best efforts" to obtain any available indemnification or recovery from all Insurance Policies held by Settling Defendants, their predecessors in interest, or affiliates. For purposes of this subparagraph, "best efforts" includes (i) asserting and pursuing claims of coverage under the Insurance Policies; (ii) negotiating and/or litigating to obtain the most favorable resolution of claims under the Insurance Policies as is reasonable; and (iii) cooperating with and assisting the United States and the State in the pursuit of such claims. Settling Defendants shall submit any proposed settlement of insurance claims to EPA and the State for prior EPA approval, following an opportunity to review and comment by the State. "Best efforts" incorporates the understanding that defenses to coverage under the Insurance Policies exist and there is risk that Settling Defendants may recover less than the limits of such Insurance Policies, including a finding that there is no coverage available under one or more of the Insurance Policies.

b.      Upon recovery of any sums by Settling Defendants under the Insurance Policies, Settling Defendants will retain 7% of such sum and the amount remaining (the "Insurance Proceeds") shall be split between the Plaintiffs as follows: 90% to the United States and 10% to the State. After payment of $470,750 to the State pursuant to this Paragraph, all remaining Insurance Proceeds shall be paid to the United States. Settling Defendants shall remit Insurance Proceeds to Plaintiffs within 15 days after receiving such proceeds. Payment shall be in accordance with the instructions set forth in Paragraphs 7 and 11.

c.      Nothing in this Section obligates Settling Defendants to pursue claims or exhaust appeals where legal or factual circumstances have materially changed since entry of this Consent Decree and Settling Defendants reasonably believe that the potential recovery no longer justifies the expense of further pursuing such claims. With regard to any Insurance Policies where Settling Defendants conclude that pursuing such claims and/or exhausting such appeals are not justified, Settling Defendants will offer to assign the-insurance proceeds for such Insurance Policies to EPA, such that EPA can pursue such claims and/or appeals. Where Settling Defendants assign insurance proceeds to EPA, EPA will retain 100% of such proceeds rather than such proceeds being distributed between XTRA and Plaintiffs pursuant to subparagraph b above. Completion of such assignment consistent with the terms of this paragraph 12.c. shall constitute best efforts under paragraph 12.a.

13.     **Payments by Settling Federal Agency**

      a.     As soon as reasonably practicable after the Effective Date, the United States, on behalf of Settling Federal Agency, shall:

      (1)     Pay to EPA $37,106,035 for EPA Past Response Costs and EPA Future Response Costs. The total amount to be paid on behalf of Settling Federal Agency pursuant to this Paragraph shall be deposited by EPA in the OAZ Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      (2)     Pay to the State $471,750 for NRD, including natural resource damage assessment costs incurred by IDNR and to pay for Trustee-sponsored natural resource restoration projects in accordance with Section VIII of the Consent Decree.

      b.     **Interest**. In the event that any payment required by Paragraph 13.a is not made within 120 days after the Effective Date, the United States, on behalf of Settling Federal Agency, shall pay Interest on the unpaid balance, with such Interest commencing on the 121st day after the Effective Date and accruing through the date of the payment.

      c.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of Settling Federal Agency under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

## VIII.   TRUSTEE-SPONSORED NATURAL RESOURCE RESTORATION PROJECTS

      14.     All funds provided to the State under this Consent Decree shall be applied toward (i) reimbursement of costs incurred and to be incurred by IDNR for NRD assessment activities relating to the Site and (ii) the costs of restoration, rehabilitation, or replacement of injured natural resources, and/or acquisition of equivalent resources, including but not limited to any administrative costs and expenses necessary for, and incidental to, restoration, rehabilitation, replacement, and/or acquisition of equivalent resources planning, and any restoration, rehabilitation, replacement, and/or acquisition of equivalent resources undertaken.

      15.     Decisions regarding any use or expenditure of funds under this Section shall be made by IDNR as State Trustee. Settling Defendants and Settling Federal Agency shall not be entitled to dispute, in any forum or proceeding, any decision relating to use of funds or restoration efforts under this Section.

## IX.     FAILURE TO COMPLY WITH CONSENT DECREE

      16.     **Interest on Payments.** If Settling Defendants fail to make the payment required by Paragraph 6 (Payment of Response Costs) or Paragraph 11 (Payment of Natural Resource Damages) by the required due date, Interest shall accrue on the unpaid balance from the

Effective Date through the date of payment. If Owner Settling Defendant fails to make the payment required by Paragraph 10 (Payment of Net Proceeds of Sale of Property) or Paragraph 12 (Payment of Insurance Proceeds) by the required due date, Interest shall continue to accrue on the unpaid balance from the date payment was due through the date of payment.

17. **Stipulated Penalty**

a. If any amounts due under Paragraph 6 (Payment of Response Costs), Paragraph 10 (Payment of Net Proceeds of Sale of Property), Paragraph 11 (Payment of Natural Resource Damages), or Paragraph 12 (Payment of Insurance Proceeds) are not paid by the required date, Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 16 (Interest on Payments), $1,000 per violation per day that such payment is late.

b. If Settling Defendants fail to use best efforts to obtain indemnification or recovery from their Insurance Policies in accordance with Paragraph 12 (Payment of Insurance Proceeds), Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, $500 per day for each day of failure to use best efforts to obtain indemnification or recovery from their Insurance Policies.

c. Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by EPA or the State. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York, NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727
> Environmental Protection Agency"

Each payment shall reference the CDCS Number, Site/Spill ID Number B5A1, and DJ Number 90-11-3-11215. All payments to the State under this Paragraph shall be identified as "stipulated penalties" and shall be made in the manner directed in Paragraph 11 (Payment of Natural Resource Damages).

d. At the time of payment, Settling Defendants shall send notice that payment has been made to EPA, DOJ, and the State in accordance with Paragraph 9 (Notice of Payment).

e. Penalties shall accrue as provided in this Paragraph regardless of whether EPA or the State has notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or performance is due and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity. Nothing in this

11

Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

18.     If the United States or the State brings an action to enforce this Consent Decree, Settling Defendants shall reimburse the United States and the State for all costs of such action, including but not limited to costs of attorney time.

19.     Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

20.     The obligations of Settling Defendants to pay amounts owed the United States and the State under this Consent Decree are joint and several. In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to make the payments required under this Consent Decree, the remaining Settling Defendant shall be responsible for such payments.

21.     Notwithstanding any other provision of this Section, the United States and the State may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties due to such Plaintiff that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section VII (Payments) or from performance of any other requirements of this Consent Decree.

## X.     COVENANTS BY PLAINTIFFS

22.     **Covenants for Settling Defendants**. Except as specifically provided in Section XI (Reservation of Rights by Plaintiffs), Plaintiffs covenant not to sue or to take administrative action against Settling Defendants and XTRA Related Parties pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), or similar Illinois laws (including as to Illinois, common law claims) regarding the Site. With respect to present and future liability, these covenants shall take effect upon the Effective Date. Such covenants shall also apply to (i) Settling Defendants' and XTRA Related Parties' successors and assigns, but only to the extent that the alleged liability of the successor or assign is based solely on the alleged liability of a Settling Defendant or XTRA Related Party; and (ii) Settling Defendants' and XTRA Related Parties' officers, directors, or employees, but only to the extent that the alleged liability of such person is based on acts or omissions which occurred in the scope of the person's employment or capacity as an officer, director, or employee of a Settling Defendant or XTRA Related Party. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including but not limited to, payment of all amounts due under Section VII (Payments), and any Interest or stipulated penalties due thereon under Section IX (Failure to Comply with Consent Decree). These covenants are also conditioned upon the veracity and material completeness of the Financial Information and the Insurance Policies provided to EPA by Settling Defendants and the financial, insurance, and indemnity certification made by Settling Defendants in Paragraph 47. These covenants extend only to Settling Defendants and XTRA Related Parties and do not extend to any other person.

23.     **Covenants for Settling Federal Agency**. Except as specifically provided in Section XI (Reservation of Rights by Plaintiffs), the State covenants not to sue or take

administrative action against Settling Federal Agency pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and EPA covenants not to take administrative action against Settling Federal Agency pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), regarding the Site. With respect to present and future liability, these covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Federal Agency of its obligations under this Consent Decree. These covenants extend only to Settling Federal Agency and do not extend to any other person.

## XI.  RESERVATION OF RIGHTS BY PLAINTIFFS

24.    Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and EPA reserves and this Consent Decree is without prejudice to, all rights against Settling Federal Agency, with respect to all matters not expressly included within Paragraph 22 (Covenants for Settling Defendants) and Paragraph 23 (Covenants for Settling Federal Agency). Notwithstanding any other provision of this Consent Decree, Plaintiffs reserve all rights against Settling Defendants and EPA reserves, and this Consent Decree is without prejudice to, all rights against Settling Federal Agency, with respect to:

a.    liability for failure of a Settling Defendant or Settling Federal Agency to meet a requirement of this Consent Decree;

b.    criminal liability;

c.    liability based on the ownership or operation of the Site by a Settling Defendant or Settling Federal Agency when such ownership or operation commences after signature of this Consent Decree by Settling Defendants or Settling Federal Agency;

d.    liability based on a Settling Defendant's or Settling Federal Agency's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendants or Settling Federal Agency; and

e.    liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

25.    Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Policies provided by a Settling Defendant, or the financial, insurance, or indemnity certification made by a Settling Defendant in Paragraph 47, is false or, in any material respect, inaccurate.

## XII.  COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCY

26.    **Covenants by Settling Defendants**. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site and this Consent Decree, including but not limited to:

13

      a.    any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      b.    any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Illinois Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

      c.    any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law, relating to the Site.

27.    **Covenant by Settling Federal Agency**. Settling Federal Agency agrees not to assert any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site and this Consent Decree. This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the NCP.

28.    Except as provided in Paragraph 30 (claims against other PRPs) and Paragraph 35 (Res Judicata and other Defenses), the covenants in Paragraphs 26 and 27 shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to any of the reservations set forth in Section XI (Reservations of Rights by Plaintiffs), other than in Paragraph 24.a (liability for failure to meet a requirement of the Consent Decree) or 24.b (criminal liability), but only to the extent that Settling Defendants' claims arise from the same response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

29.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

30.    Settling Defendants and XTRA Related Parties agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs and for Natural Resource Damages and assessment costs relating to the Site against each other or any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant or XTRA Related Party may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant or XTRA Related Party.

## XIII.   EFFECT OF SETTLEMENT / CONTRIBUTION

31.    Except as provided in Paragraph 30 (claims against other PRPs), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree, other than the XTRA Related Parties. Except as

14

provided in Section XII (Covenants by Settling Defendants and Settling Federal Agency), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

32.     The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which Settling Defendants, XTRA Related Parties, and Settling Federal Agency have, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken, all response costs incurred or to be incurred, and Natural Resource Damages at or in connection with the Site, by the United States or any other person, provided, however, that if the United States exercises rights under the reservations in Section XI (Reservations of Rights by Plaintiffs), other than in Paragraphs 24.a (liability for failure to meet a requirement of Consent Decree) or 24.b (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions or Natural Resource Damages that are within the scope of the exercised reservation.

33.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the Plaintiffs in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant and Settling Federal Agency has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

34.     Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA, DOJ, and the State in writing no later than 60 days prior to the initiation of such suit or claim. Each Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA, DOJ, and the State in writing within 10 days after service of the complaint or claim upon it. In addition, each Settling Defendant shall notify EPA, DOJ, and the State within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

35.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendants (and with respect to a State action, Settling Federal Agency) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding

were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section X.

## XIV. PROPERTY REQUIREMENTS

36. **Agreements Regarding Access and Non-Interference**. Owner Settling Defendant shall, with respect to its Affected Property:

a. Provide the United States, the State, potentially responsible parties who have entered or may enter into an agreement with the United States or the State for performance of response action at the Site (hereinafter "Performing Parties"), and their representatives, contractors, and subcontractors with access at all reasonable times to its Affected Property to conduct any activity relating to response actions at the Site including the following activities:

(1) Verifying any data or information submitted to the United States or the State;

(2) Conducting investigations regarding contamination at or near the Site;

(3) Obtaining samples;

(4) Assessing the need for, planning, implementing, or monitoring response actions;

(5) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Owner Settling Defendant or its agents, consistent with Section XV (Access to Information);

(6) Assessing Owner Settling Defendant and any Performing Party's compliance with the Consent Decree;

(7) Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, under the Consent Decree; and

(8) Implementing, monitoring, maintaining, reporting on, and enforcing any institutional controls or any land, water, or other resource use restrictions regarding the Affected Property.

b. Refrain from using its Affected Property in any manner that EPA determines will (i) pose an unacceptable risk to human health or to the environment due to exposure to hazardous substances or (ii) interfere with or adversely affect the implementation, integrity, or protectiveness of response actions at the Site.

c. Implement the following institutional controls at the Site:

(1) Implementation of land use restrictions to maintain commercial/industrial land use on the consolidation area on the Facility Area.

16

(2)    Implementation of groundwater restrictions to prohibit well installation and use of shallow affected groundwater.

(3)    Implementation of land use controls to record the presence of buried waste and prohibit the disturbance of the cover system.

(4)    Implementation of institutional controls to ensure that building slabs/foundations and the parking lot around the main building remain in place and in intact condition to serve as engineering controls to prevent human exposure to the underlying contamination. The institutional controls and engineering controls for these areas of the Site will serve to prohibit the disturbance and/or removal of the existing building foundations/slabs and parking lot without prior written approval of the EPA or unless addressed by an EPA approved Soil Management Plan.

(5)    The recording of an environmental restrictive covenant in accordance with the Illinois Uniform Environmental Covenants Act, noting the presence of buried waste and provisions to prevent disturbance of the cover system and/or engineering controls, is required for not only the consolidation area but also the two specified areas containing existing buildings and a parking lot.

37.    If EPA determines in a decision document prepared in accordance with the NCP that institutional controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are needed regarding the Affected Property, Owner Settling Defendant shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such additional institutional controls.

38.    **Notice to Successors-in-Title**

a.    Owner Settling Defendant shall, within 15 days after the Effective Date, submit for EPA approval a notice to be filed regarding the Affected Property in the appropriate land records. The notice must: (1) include a proper legal description of the Affected Property; (2) provide notice to all successors-in-title that the Affected Property is part of, or related to, the Site and that EPA has selected a response action for the Site; and (3) identify the document requiring implementation of the response action, including, if applicable, the name and civil action or docket number of the matter. Owner Settling Defendant shall record the notice within 10 days after EPA's approval of the notice and submit to EPA, within 10 days thereafter, a certified copy of the recorded notice.

b.    Owner Settling Defendant shall, prior to entering into a contract to Transfer its Affected Property, or 60 days prior to Transferring its Affected Property, whichever is earlier:

(1)    Notify the proposed transferee that EPA has selected a response action regarding the Site; and

17

(2)     Notify EPA and the State of the name and address of the proposed transferee and provide EPA and the State with a copy of the above notice that it provided to the proposed transferee.

39.     In the event of any Transfer of the Affected Property, unless the United States otherwise consents in writing, Owner Settling Defendant shall continue to comply with its obligations under the Consent Decree.

40.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require institutional controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XV.     ACCESS TO INFORMATION

41.     Settling Defendants shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Site.

42.     **Privileged and Protected Claims**

a.     Settling Defendants may assert that all or part of a Record is privileged or protected as provided under federal law, provided they comply with Paragraph 42.b, and except as provided in Paragraph 42.c.

b.     If Settling Defendants assert a claim of privilege or protection, they shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendants shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected information only. Settling Defendants shall retain all Records that they claim to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendants' favor.

c.     Settling Defendants may make no claim of privilege or protection regarding:

(1)     any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2)     the portion of any Record that Settling Defendants are required to create or generate pursuant to this Consent Decree.

18

43.     **Business Confidential Claims**. Settling Defendants may assert that all or part of a Record submitted to Plaintiffs under this Section or Section XVI (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Settling Defendants shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Defendants assert a business confidentiality claim. Records that Settling Defendants claim to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

44.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XVI.   RETENTION OF RECORDS

45.     Until five years after the Effective Date, each Settling Defendant shall preserve and retain all non-identical copies of Records now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as an owner or operator of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

46.     After the conclusion of the record retention period in the preceding paragraph, Settling Defendants shall notify EPA, DOJ, and the State at least 90 days prior to the destruction of any such Records, and, upon request by EPA, DOJ, or the State, except as provided in Paragraph 42 (Privileged and Protected Claims), Settling Defendants shall deliver any such Records to EPA or the State.

47.     Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.     not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State, and that it has fully complied with any and all EPA and State requests for information regarding the Site and its financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law;

b.     submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially

changed between the time the financial information was submitted to EPA and the time such Settling Defendant executes this Consent Decree; and

           c.     fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

48.    The United States acknowledges that Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XVII.  NOTICES AND SUBMISSIONS

49.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ by email**:          eescasemanagement.enrd@usdoj.gov

**As to DOJ by regular mail**:    EES Case Management Unit
                                    U.S. Department of Justice
                                    Environment and Natural Resources Division
                                    P.O. Box 7611
                                    Washington, D.C. 20044-7611
                                    Re: DJ # 90-11-3-11215

                                    and

                                    Chief
                                    U.S. Department of Justice
                                    Environment and Natural Resources Division
                                    Environmental Defense Section
                                    P.O. Box 7611
                                    Washington, D.C. 20044-7611
                                    Re: DJ # 90-11-6-20288

**As to EPA**:                     Thomas Turner
                                    Office of Regional Counsel
                                      U.S. EPA, Region V
                                    77 West Jackson Blvd.
                                    Chicago, IL 60601

and

Sheila Desai
Superfund & Emergency Management Division (SR-6J)
U.S. EPA, Region V
77 West Jackson Blvd.
Chicago, Illinois 60604

**As to the State**:　　　　　Tom Heavisides
Illinois Department of Natural Resources
1 Natural Resources Way
Springfield, IL 62702

and

General Counsel
Illinois Department of Natural Resources
1 Natural Resources Way
Springfield, IL 62702

**As to Setting Defendants**:　　　General Counsel
XTRA Corporation
7911 Forsyth Boulevard, Suite 600
St. Louis, Missouri 63105

and

Steven J. Poplawski
Bryan Cave Leighton Paisner LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102
sjpoplawski@bclplaw.com

## XVIII. RETENTION OF JURISDICTION

50.　　This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XIX.   INTEGRATION / APPENDICES

51.　　This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in

21

this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the Site.

"Appendix B" is a list of the financial documents submitted to EPA by Settling Defendants.

"Appendix C" is a list of Insurance Policies.

"Appendix D" is a list of permitted encumbrances on the Property.

## XX.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

52.    This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

53.    If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI.    SIGNATORIES / SERVICE

54.    Each undersigned representative of a Settling Defendant and the Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division, Environmental Enforcement Section, and the Illinois Attorney General certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

55.    Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

56.    Each Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  FINAL JUDGMENT

57.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and Settling

Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ___7th___ DAY OF ___June_____, 2021.

_____
United States District Judge

23

Signature Page for Consent Decree in *United States and State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.) (OAZ Superfund Site)

**FOR THE UNITED STATES OF AMERICA**:

JEAN E. WILLIAMS
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

JEFFREY SPECTOR
Digitally signed by JEFFREY SPECTOR
Date: 2021.03.29 18:33:12 -04'00'

JEFFREY A. SPECTOR
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611

DANIEL DERTKE
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611

Signature Page for Consent Decree in *United States and State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.) (OAZ Superfund Site)

**FOR THE UNITED STATES OF AMERICA**:

STEVEN D. WEINHOEFT
United States Attorney
Southern District of Illinois

NATHAN D. STUMP
Assistant United States Attorney
Southern District of Illinois
United States Attorney's Office
9 Executive Drive
Fairview Heights, IL 62208

Signature Page for Consent Decree in *United States and State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.) (OAZ Superfund Site)

**FOR THE UNITED STATES OF AMERICA**:

Digitally signed by
DOUGLAS BALLOTTI
Date: 2020.08.20
14:46:27 -05'00'

Douglas Ballotti, Director
Superfund Emergency & Management Division

26

Signature Page for Consent Decree in *United States and State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.) (OAZ Superfund Site)

**FOR THE STATE OF ILLINOIS:**

08/03/2020
Dated

ANDREW B. ARMSTRONG
Chief, Environmental Bureau
Illinois Attorney General's Office
500 S. Second St.
Springfield, IL  62701

27

Signature Page for Consent Decree in *United States and State of Illinois v. XTRA Intermodal, Inc. and X-L-Co., Inc.* (S.D. Ill.) (OAZ Superfund Site)

**FOR XTRA INTERMODAL, INC.:**

6/10/2020
Date

Name (print): Michael J. Dreller
Title: VP, CFO
Address: 7911 Forsyth Blvd., Suite 600
St. Louis, MO 63105

**FOR X-L-CO., INC.:**

6/10/2020
Date

Name (print): Michael J. Dreller
Title: VP, CFO
Address: 7911 Forsyth Blvd., Suite 600
St. Louis, MO 63105

Agent Authorized to Accept Service on Behalf of Above-signed Parties:

Name:       Andrew L. Krueger
Title:        Vice President & General Counsel
Company:   XTRA Lease LLC
Address:    7911 Forsyth Blvd., Suite 600
            St. Louis, MO 63105
Phone:      (314) 719-0372
email:       alkrueger@xtra.com

# APPENDIX A

**Legend**

Surrounding Properties Boundary
Facility Area Boundary

Figure 1
OAZ Project Overview
Aerial Map

Old American Zinc (OAZ)
Fairmont City, Illinois

US Army Corps
of Engineers ®
St. Louis District

BASE MAP SOURCE: ESRI World Imagery Layer, 2016

UNCLASSIFIED  FOUO

Contains Privileged Information:  Do Not Release

# APPENDIX B

## List of Financial Documents

- XTRA Intermodal, Inc. Balance Sheets as of December 31, 2013-2017; August 31, 2018; December 31, 2019; and March 31, 2020;

- XTRA Intermodal, Inc. Income Statements for years ended December 31, 2013-2017 and 2019; year to date August 31, 2018; and year to date March 31, 2020;

- XTRA Corporation and Subsidiaries U.S. Corporation Income Tax Returns for years ended December 31, 2013-2016, 2018;

- Independent appraisal of the Old American Zinc plant site, conducted for a separate but related legal matter in 2014;

- St. Clair County, Illinois Tax Assessor Parcel Details for the Site as of December 31, 2017;

- Secretary of State Records and Filings for X-L-Co., Inc., XTRA Intermodal, Inc., XTRA, Inc., XTRA LLC, and XTRA Corporation;

- XTRA Corporation SEC Filings through 2001

# APPENDIX C

Insurance Policies

| Insurer | Policy No. | Inception Date | Expiration Date | Named Insured |
|---|---|---|---|---|
| American Home Assurance Co | BE337 88 20 | 3/14/1974 | 3/14/1977 | XTRA, Inc.; A.J.F. Industries, Inc.; X-L-Co., Inc. |
| Providence Washington Ins Co | CL37 73 95 | 10/20/1974 | 10/20/1977 | XTRA, Inc.; X-L-Co., Inc; MMX Corp.; XTRA International LTD |
| Royal Globe Ins Co | PYN29 71 30 | 1/3/1975 | 1/3/1978 | X-L-Co., Inc.; |
| First State Ins Co | 905344 | 3/14/1977 | 11/1/1977 | XTRA, Inc.; X-L-Co., Inc; AJF Industries, Inc; MMX Corp.; XTRA International LTD |
| Providence Washington Ins Co | CL41 47 71 | 10/20/1977 | 10/1/1980 | XTRA, Inc.(handwritten A Main Corp.); X-L-Co., Inc. (handwritten deletion); MMX Corp.; XTRA International LTD; EXTRA Corporation, A Delaware Corp (handwritten addition) |
| Associated Indemnity Corp | LP238 1161 | 10/1/1977 | 10/1/1978 | Unknown |
| First State Ins Co | 907563 | 11/1/1977 | 10/1/1978 | XTRA, Inc.; X-L-Co., Inc; AJF Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| Royal Globe Ins Co | PYN38 18 63 | 1/3/1978 | 10/2/1978 | X-L-Co., Inc. |
| American Ins Co | XLX136 3801 | 1/3/1978 | 10/1/1978 | XTRA, Inc.; X-L-Co., Inc; AJF Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| Associated Indemnity Corp | LP241 1349 | 10/1/1978 | 10/1/1979 | A.J.F. Industries, Inc.,; Intermodal, In c. DBA X-TACR and Intermodal, Inc.; XTRA Corporation (A Delaware Corp.) and XTRA Inc. (A Maine Corp.) |

Insurance Policies

| First State Ins Co | 908684 | 10/1/1978 | 10/1/1979 | XTRA, Inc.; X-L-Co., Inc; A.J.F. Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| American Ins Co | XLX136 3772 | 10/1/1978 | 10/1/1979 | Xtra, Inc.; X-L-Co., Inc;  AJF Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| Associated Indemnity Corp | LP271 6094 | 10/1/1979 | 10/1/1980 | A.J.F. Industries, Inc.; X-L-Co., Inc. & XTRA, Inc.(A Maine Corp); XTRA Corporation (A Delaware Corp); XTRA International Ltd; Intermodal, Inc.; DBA X-TACR and Intermodal, Inc. |
| First State Ins Co | 944171 | 10/1/1979 | 10/1/1980 | XTRA Corporation; XTRA, Inc.; X-L-Co., Inc;  A.J.F. Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| American Ins Co | XLX136 3787 | 10/1/1979 | 10/1/1980 | Xtra, Inc.; X-L-Co., Inc;  AJF Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc.; XTRA Corporation |
| American Ins Co | XLX136 2339 | 11/14/1979 | 10/1/1980 | Xtra, Inc.; X-L-Co., Inc;  AJF Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc.; XTRA Corporation |
| Associated Indemnity Corp | LP271 6092 | 10/1/1980 | 10/1/1981 | XTRA Corporation; Intermodal, Inc. DBA X-TACR and Intermodal, Inc.; A.J.F. Industries, Inc.; XTRA, Inc.; X-L-Co., Inc.; XTRA International Ltd.; MMX Corporation |

Insurance Policies

| First State Ins Co | 947726 | 10/1/1980 | 10/1/1981 | XTRA Corporation; XTRA, Inc.; X-L-Co., Inc;  A.J.F. Industries, Inc; MMX Corp.; XTRA International LTD; Intermodal, Inc. |
| American Ins Co | XLX136 2329 | 10/1/1980 | 10/1/1981 | Xtra Corporation and subsidiaries |
| Associated Indemnity Co | LP271 6091 | 10/1/1981 | 10/1/1982 | XTRA Corporation; Intermodal, Inc. DBA X-TACR and Intermodal, Inc.; A.J.F. Industries, Inc.; XTRA, Inc.; X-L-Co., Inc.; XTRA International Ltd.; MMX Corporation |
| First State Ins Co | 946768 | 10/1/1981 | 10/1/1982 | XTRA Corporation and subsidiaries |
| American Ins Co | XLX144 0565 | 10/1/1981 | 10/1/1982 | Xtra Corporation and subsidiaries |
| Associated Indemnity Corp | KLP322 2000 | 10/1/1982 | 10/1/1983 | XTRA Corporation; Intermodal, Inc. DBA X-TACR and Intermodal, Inc.; A.J.F. Industries, Inc.; XTRA, Inc.; X-L-Co., Inc.; XTRA International Ltd.; MMX Corporation and any subsidiary |
| First State Ins Co | 951343 | 10/1/1982 | 10/1/1983 | XTRA Corporation and subsidiaries |
| American Ins Co | XLX153 2193 | 10/1/1982 | 10/1/1983 | Xtra Corporation and subsidiaries |
| U S Fire Ins Co | 522 012891 6 | 4/4/1983 | 10/1/1983 | Xtra Corporation and subsidiaries |
| American Ins Co | XLX153 2150 | 4/4/1983 | 10/1/1983 | Xtra Corporation and subsidiaries |
| First State Ins Co | 934059 | 4/4/1983 | 10/1/1983 | XTRA Corporation and subsidiaries |
| Associated Indemnity Corp | KLA321 6715 | 10/1/1983 | 10/1/1984 | XTRA Corporation; Intermodal, Inc.; A.J.F. |

Insurance Policies

|  |  |  |  | Industries, Inc.; XTRA, Inc.; X-L-Co., Inc.; XTRA International Ltd.; MMX Corporation |
|---|---|---|---|---|
| American Ins Co | XLX153 2132 | 10/1/1983 | 10/1/1984 | Xtra Corporation and subsidiaries |
| U S Fire Ins Co | 522 013189 5 | 10/1/1983 | 10/1/1984 | Xtra Corporation and subsidiaries |
| American Ins Co | XLX153 2133 | 10/1/1983 | 10/1/1984 | Xtra Corporation and subsidiaries |
| US Fire Ins Co | 522 013180 5 | 10/1/1983 | 10/1/1984 | Xtra Corporation and subsidiaries |
| Federal Ins Co | 7146 87 48 | 10/1/1984 | 10/1/1987 | Xtra Corporation and subsidiaries thereof except Mercury Motor Express, Inc. |
| American Ins Co | XLX162 1386 | 10/1/1984 | 10/1/1985 | XtraCorporation and subsidiaries |
| U S Fire Ins Co | 522 013317 3 | 10/1/1984 | 10/1/1985 | Xtra Corporation and subsidiaries |
| American Ins Co | XLX162 1385 | 10/1/1984 | 10/1/1985 | XtraCorporation and subsidiaries |

# APPENDIX D

## PERMITTED ENCUMBRANCES

1. Any lien or right to a lien, for services, labor, or material furnished on or before June 30, 2020, imposed by law and not shown by the public records.

2. Taxes, or special assessments, if any, incurred on or before June 30, 2020, not shown as existing liens by the public records.

3. Taxes for the years 2019 and 2020 and thereafter which are a lien not yet due or payable.